IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 25, 2008

**GEORGE A. JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Sevier County**
**No. 11338-III   Rex Henry Ogle, Judge**

_____

**No. E2007-00920-CCA-R3-PC - Filed August 4, 2008**

_____

Petitioner, George A. Johnson, was convicted by a Sevier County Jury of rape and statutory rape. As a result, he received an effective sentence of twenty years. Petitioner appealed his convictions and sentence to this Court. *See State v. George A. Johnson*, No. E2003-02881-CCA-R3-CD, 2005 WL 225025, at *1 (Tenn. Crim. App., at Knoxville, Jan. 31, 2005), *perm. app. denied* (Tenn. May 2, 2005). Petitioner subsequently sought post-conviction review on the basis of ineffective assistance of counsel. The post-conviction court denied the petition, determining that Petitioner failed to carry the burden required for post-conviction relief. We agree and, therefore, affirm the denial of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. C. MCLIN, JJ., joined.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, George A. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and Steven Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

Petitioner was convicted in Sevier County of rape and statutory rape. On appeal from his convictions and sentence, this Court summarized the facts that formed the basis for the convictions as follows:

> The victim, S.N.,[1] who was fifteen years old at the time of trial in September 2003, testified that the defendant is married to her aunt. In April 2002, she went to the defendant's apartment to spend the night with the defendant's daughter, C.J. While C.J. was asleep on the top bunk, and S.N. was asleep on the bottom bunk, S.N. awoke because the defendant was beside the bed touching her vagina with his "finger and his tongue." Asked if his finger went inside of her, S.N. responded, "Yes." She said the defendant pulled down her pajamas, although she "told him not to." S.N. did not "holler" for her aunt because she was scared she "would get in trouble." She also responded affirmatively when asked if the defendant put his tongue in her vagina. When she got home the next day, she did not tell her mother because she was scared she would get in trouble, but when her mother asked her "some days" later if the defendant had "touched anything," S.N. "cried" and told her mother what had happened. She related that until the rape, she liked her uncle and had no problems with him in the past.
>
> On cross-examination, S.N. testified that she was wearing "regular pajamas" which the defendant pulled down "a little to [her] knees." He pulled her legs apart and did not say anything during the encounter. When defense counsel asked S.N. if she "ever threatened to make accusations like these against anybody else," the transcript reflects her response was indiscernible. She acknowledged knowing a "Mr. Ireland," but answered, "No" when asked if she remembered telling him she would get him in trouble. Asked if she attempted to push the defendant's hand away, S.N. answered, "One time."
>
> Julia Edney, the victim's mother, testified that S.N. has "ADHD, which means she's a little slow as far as picking up work" and that although S.N. was in the ninth grade, most of her schoolwork was on the fifth grade level. She said her daughter was thirteen years old in April 2002 and had occasionally spent the night at the defendant's apartment, doing so in April 2002. Sometime after the rape, Edney confronted her daughter and asked her if the defendant "had ever touched her." S.N.

---

[1]It is the policy of this court to identify victims of sexual abuse by their initials only.

"got all quiet and started crying." Edney stated the school counselor "had already turned it in," and both she and S.N. talked to the police and the Department of Human Services ("DHS"). On cross-examination, she denied that S.N. had accused someone of a similar offense a few years before.

Detective Sam Henson of the Sevierville Police Department met with S.N., her mother, and a DHS representative in June 2002 to discuss the rape. He also questioned the defendant on three separate occasions. After the second meeting, the defendant "indicated he needed to relate some information . . . , and that he would be back." The defendant voluntarily returned for a third meeting and gave an incriminating statement, which was tape-recorded. The audiotape was played in court and entered into evidence, along with a typed transcript of the interview. Detective Henson testified that the defendant was advised of his Miranda rights and signed an admonition and waiver form, which was also entered into evidence, at the third meeting on June 27, 2002. After the third meeting, the defendant was not arrested, but was allowed to leave so that he could "finish out his pay period so that he could get his paycheck and give it to his wife . . . ." According to Detective Henson, the defendant was not a "flight risk," and S.N. was being kept away from the defendant and was therefore not in danger. The defendant was arrested later on the rape charges. On cross-examination, Detective Henson said that the defendant denied the rape allegations at the first two meetings. At the third meeting, the defendant related to Detective Henson that he was concerned about his family's financial situation.

Testifying for the defense, Leon Ireland identified himself as the defendant's brother-in-law and the victim's uncle. Asked about the victim's reputation for honesty or dishonesty, Ireland stated, "Well, I guess generally, in my opinion, she's not been the most honest person to me. But then I can't speak for everybody else." On cross-examination, he acknowledged that he had no direct knowledge of what transpired between the defendant and the victim the night of the rape.

Patricia Johnson, the defendant's wife, testified that the victim, her niece, visited her home "two to three times a month during the summer" and often spent the night. She acknowledged that the victim had spent the night in her home on more than one occasion in April 2002. On the night of the rape, Johnson did not recall hearing or being awakened by any sort of noises. The morning after the rape, S.N. did not act differently toward the defendant or say anything to Johnson about the incident. Johnson also testified that if her husband had gotten up during the night, she would have awakened.

The defendant testified he never went into the bedroom where S.N. was sleeping at night. He also denied removing her clothing, touching her vagina, or performing oral sex on her. Asked to explain why the victim made these allegations,

the defendant stated, "Well, I told her she couldn't go in me [sic] and my wife's bedroom to watch TV anymore because I found her going through things on my wife's side of the bed" about a week before the incident. The defendant admitted making a statement to the police but said it was not a true statement. He explained that he was pressured into making a statement to Detective Henson:

> Q. Please explain why you made that statement.
> A. I was told on the third occasion that I went down there, and this was in the training room where there's no recording devices or TV cameras or anything, that if I didn't cooperate he was going to come down like a ton of bricks and I would go to the slammer.
> Q. Okay. By "cooperate," what did you take that to mean?
> A. That means I make a statement here and now or else.
> Q. And did you talk to the detective about the need for you to work?
> A. Yes, ma'am.
> Q. And when did that conversation occur?
> A. In the training room.
> Q. Did it occur before or after you made your statement?
> A. Before.
> Q. So you told him you are needing to get out and work, take care of your family, before you made your statement?
> A. Yes, ma'am.
> Q. And did he say anything in response to that?
> A. He said I could make a statement now or I could go to jail.
> Q. So you believed that if you didn't make a statement you would be arrested immediately.
> A. Yes, ma'am.

On cross-examination, the defendant acknowledged being advised of his "rights" and to signing waiver forms before being questioned the first two times by Detective Henson and that he denied during those two interviews that the incident occurred. He admitted that the voice on the audiotape of the third meeting was his and he had told Detective Henson that he touched the victim's vagina. However, he testified that the statement was untruthful and the questions were "specifically tailored . . . in a way where I was to answer them in order for him to garner the information he needed for a conviction." The defendant said he gave a confession out of "fear for [his] family."

On appeal, this Court determined that the evidence was sufficient to support the convictions, the trial court properly denied the motion to suppress, the record supported the sentence imposed by the trial court, and Petitioner waived an issue with regard to impeachment of the victim for failing to raise it in a motion for new trial. *See id.* at *3-11. The supreme court denied permission to appeal on May 2, 2005.

Petitioner subsequently filed a pro se petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel because: (1) counsel failed to raise an issue regarding impeachment of the victim on appeal; (2) counsel failed to object to the competence of the victim to testify at trial and failed to preserve this issue for appellate review; (3) counsel failed to present a "coherent defence [sic] to the rape (by coersion [sic]) conviction and preserve for appellate review;" and (4) counsel failed to object to the dual convictions for rape and statutory rape on double jeopardy grounds. The post-conviction court appointed counsel and held a hearing on the petition.

*Evidence at the Post-conviction Hearing*

At the post-conviction hearing, the only testimony was provided by trial counsel. She testified that she was appointed to represent Petitioner at trial. Trial counsel informed the post-conviction court that she had been an assistant public defender since 1995 and had handled numerous cases involving sexual offenses. She recalled that prior to trial Petitioner insisted that the minor victim was incompetent to testify. Trial counsel explained the standards for competency to Petitioner and informed him that she believed that the victim would be deemed competent to testify. Trial counsel made this informed decision based on her preparation for trial which included an interview of the victim's mother and several other people. Trial counsel was aware that the victim had been diagnosed with Attention Deficit Hyperactivity Disorder but did not feel that this would affect her ability to testify at trial. On cross-examination, trial counsel stated that she did not find anything during her investigation that made her believe that the victim was incompetent to testify.

Trial counsel recalled that during trial, she questioned Petitioner's brother-in-law , who is also the victim's uncle, about the victim's personality and trustworthiness. In his opinion, the victim was "particularly untruthful." Trial counsel testified that she attempted to elicit testimony from the victim's uncle about an alleged threat that he made against the victim. Trial counsel stated that the trial court did not allow this testimony after objection by the State. Trial counsel acknowledged that this issue was not included in the motion for new trial.

The post-conviction court denied the petition for post-conviction relief. In its memorandum opinion, the post-conviction court stated:

> The first issue, as has been pointed out [in the opinion on direct appeal] . . . relates to the issue of preserving the issue of credibility and the admission of - - or exclusion of certain statements, and the Court of Criminal Appeals said that it was not raised in a motion for a new trial . . . .
>
> An attorney does not . . . , have a duty to raise issues that they do not think are appropriate. . . . It wasn't raised at the motion for a new trial. The Court ruled and the Tennessee Court of Criminal Appeals obviously did not alter the Court's ruling, but the Court - - the initial inquiry, and the Court held, that those were not admissible. The Court still feels like they were not admissible based on the

statement, and so the Court is satisfied that counsel was in compliance with the Sixth Amendment on those issues.

As to the competency of the victim in this case to testify, again, counsel has to make a decision as to whether that is an issue or how far to pursue it; especially in cases of sexual abuse involving a minor, it starts down a slippery slope when you attack the victim. . . .

The Court would point out, however, that every witness is presumed competent to testify assuming that they meet the preliminary standards of understanding the seriousness of the matter about which they are testifying and the acknowledgment of the duty and importance of telling the truth. And that, the Court is satisfied, was done. The Court had no issue about the competency of . . . this witness . . . [trial counsel] made a tactical decision that that was not an issue that needed to be challenged further. . . . So the failure to raise it on appeal . . . the Court does not see any harm in this.

And I go back again to the confession of this defendant. The Court judged his credibility. I mean, it was clear to this Court from the suppression hearing and his trial that this defendant's defense was a farce. It's a flat out farce. The jury didn't believe it. The Court didn't believe it. The Court of Criminal Appeals didn't believe it. So, you know, there you have it.

The essence here is, is there anything that counsel either did or didn't do that had an effect, a negative effect for [Petitioner] on his trial, his conviction and his sentence. Based on the admissions, which the Court has already determined, of [Petitioner], any error to raise these issues on appeal is, beyond a reasonable doubt, harmless. So, based upon all that, the Court finds that the motion for post-conviction relief has not met the standard of clear and convincing evidence . . . .

On appeal, Petitioner argues that the post-conviction court improperly denied the petition for post-conviction relief.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*,

54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

*Failure to Investigate Victim's Competence and Object to Victim's Testimony*

First, Petitioner argues on appeal that trial counsel failed to investigate the victim's competence and failed to object to the testimony of the victim at trial.

The testimony presented at the hearing included statements of trial counsel, who testified that she investigated the victim's competence prior to trial and did not feel that it was an issue worthy of raising. Furthermore, trial counsel did not feel that this issue would be worthwhile to pursue on appeal. Petitioner presented no testimony to show how he was prejudiced by trial counsel's decision

or that the victim was, in fact, incompetent. Again, this Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* Trial counsel investigated the issue of the victim's competence prior to trial and made a tactical decision not to pursue the matter. Petitioner has failed to sustain his burden. This issue is without merit.

*Failure to Impeach Victim with Victim's Prior Inconsistent Statement*

Petitioner also argues on appeal that he received ineffective assistance of counsel because trial counsel failed to impeach the victim at trial with a prior inconsistent statement and failed to preserve this issue for appeal by including it in the motion for new trial. Further, Petitioner argues that the trial court improperly excluded the extrinsic evidence of the victim's prior inconsistent statement. The State counters that Petitioner failed to satisfy his burden on appeal and that the evidence does not preponderate against the judgment of the post-conviction court.

At trial, trial counsel asked the victim if she had ever threatened anyone with false accusations of sexual abuse. The victim testified that she had not. Trial counsel attempted to call Leon Ireland to impeach the victim's statement. Apparently, Mr. Ireland would have testified that after the allegation was made against Petitioner, the victim had threatened Mr. Ireland with false accusations of sexual abuse by saying, "If you don't leave me alone, you'll be in the jailhouse like . . . ." The victim did not finish the sentence. At trial, the trial court excluded the testimony. Trial counsel objected. The trial court record "does not reveal when or where the victim allegedly made this statement, and it is unclear why, supposedly, it was made to defense witness Leon Ireland, since he was not asked about it in his testimony." *George A. Johnson*, 2005 WL 225025, at *10. At the hearing on the post-conviction petition, trial counsel admitted that the issue regarding impeachment of the victim was "left out" of the motion for new trial, but that it was "argue[d] . . . in the appeal." On direct appeal to this Court, we determined that the issue was "waived, for purposes of appeal" because it was not raised in the motion for new trial. *Id.*

Petitioner argues on appeal that counsel's failure to raise the issue of impeachment in the motion for a new trial constituted deficient performance. Moreover, Petitioner argues that the trial court erred in refusing to allow Mr. Ireland to testify as to the victim's alleged statement to him. First, it should be noted that the question of whether the trial court erred in denying the admission of Mr. Ireland's testimony on this point was waived in the direct appeal, and remains waived in the post-conviction appeal. *See*, T.C.A. 40-30-106(g).

Turning to the failure of trial counsel in the motion for new trial to raise the issue of impeachment of the victim with a prior inconsistent statement, it appears that at the post-conviction hearing trial counsel was not asked why the issue was not presented in the motion for new trial. Nevertheless, Petitioner has failed to carry his burden of showing that had this issue been raised he would have received relief on the merits. He has also failed to prove that more probably than not the results of his trial would have been different had the failure to admit Mr. Ireland's testimony been properly preserved and addressed on appeal. Mr. Ireland did not testify as to how the victim had

-8-

threatened him with allegations of sexual abuse or in what context such alleged threats were made. As noted earlier, the trial record reveals only a statement of counsel as to what Mr. Ireland would testify if allowed. The alleged statement made by the victim did not reference any sexual abuse. Under these circumstances we cannot say that had this issue been reviewed on appeal the trial court would have been reversed and the extrinsic evidence of prior statements admitted.

Moreover, even if evidence of the victim's alleged prior statement had been admitted it is unlikely the result of the trial would have been different. Petitioner had confessed to a sexual encounter with the victim, and although he argued at trial his confession was the product of duress, it was powerful evidence of guilt unlikely to be undone by the rather vague alleged threat of sexual abuse allegations by the victim against Mr. Ireland. Under these circumstances we hold Petitioner has failed to carry his heavy burden of proof in showing he received ineffective assistance of counsel.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JERRY L. SMITH, JUDGE